Good morning, your honors. My name is Monty Stone. I represent the appellant Bernard Turnoy. Your honors, this court should reverse the ruling of the district court for three reasons. The first is that the 1099 issued by Mr. Turnoy to David Shiner was not incorrect. While ultimately the funds never were paid to Mr. Shiner because Mr. Turnoy's accounts were drained by the litigation that resulted from it, he had written a check to Mr. Shiner and he believed in good faith that he was supposed to issue a 1099 for that check, and Mr. Shiner was holding the check and had never indicated that he would return it. Second, even if the court believes that the 1099 was somehow faulty, Mr. Turnoy's conduct does not rise to the level of fraud, and the tax code that was brought up by the district court requires a fraudulent return, not simply a false one. Finally, the arguments raised by Mr. Shiner, who did not file an appellate brief, that this is somehow moot are not accurate. Mr. Turnoy is still unable to obtain errors and omissions insurance because the district court made a substantive ruling that he committed tax fraud, and for that reason nobody wants to insure him. Can I just ask you a couple of quick questions, Mr. Stone? If Mr. Turnoy had known that Shiner had refused the check with the condition that he had put on it, would you agree that that might be sufficient to support these findings? Mr. Turnoy sent Mr. Shiner a check, so at this point in time we have the check in Shiner's hands, which is typically sufficient to show a payment. Typically, but here we have the conditions, that's why I'm asking. What the state court found is that when Mr. Turnoy sent the check and along with the check sent a letter saying, listen, here's your money, I'm going to send you I had an affirmative obligation to somehow tell him, I'm not taking this check. Either return it or send him a letter demanding an unrestricted check, whatever. If he had sent such a letter, then at that point in time, Mr. Turnoy maybe wouldn't have been in his rights to send a 1099. Stop payment on the check. But is there any evidence in the summary judgment record that Mr. Turnoy did know of a refusal by Shiner? No, in fact the opposite. As far as we can tell, this was a setup. Mr. Shiner did not return the check for months, and when he finally did, it was because he was going to file this tax fraud lawsuit. That was the only reason why he ever returned it. Do we know why Mr. Turnoy insisted on this restrictive endorsement? He seemed to have agreed he owed Shiner at least that much, right? Right, so it's laid out a little bit in the facts of the brief, but basically what happened here is Mr. Turnoy was sort of a long-time life insurance broker for Mr. Shiner's mother-in-law and mother-in-law wanted to change around her life insurance policies so David Shiner said, hey, I got my broker's license, you're going to split the commissions with me now. So Turnoy was obviously a little perturbed by that because he was doing all the work, but he said, fine, we'll split commissions. What he told him he would pay him was the commissions. The thing is that insurance companies don't just pay commissions, they also give brokers an expense reimbursement, which is tied to how much the policies are but it's designed to help them maintain offices and things like that. Shiner said, I want half of that also. We said all the money, and he said, no we agreed half of commissions. It seems like an expensive hardball tactic the way it turned out. Exactly. At worst you have a false 1099 that Mr. Turnoy sent because he believed in good faith this is what he was supposed to do. He was put in a very awkward situation where there's a check for a lot of money outstanding, didn't know what to do with it and he said, he went to his accountant and his accountant said, well, better to disclose than not to disclose. Let the IRS sort it out. The worst case scenario is the IRS tells you to amend your return. If he returns the check later, you can always amend your return, but better to put it on the record than not put it on the record. And that's what he did. I think that more than anything else that that should be the basis for why the court should rule in our favor is that we want to encourage taxpayers to disclose what they do with their money to the IRS and if this court finds that Mr. Turnoy committed fraud, essentially what you're saying is don't tell the IRS what happened next time. Don't issue a 1099 when you're not supposed to. Thank you. Okay, thank you. Mr. Stahl. And it's correct that nobody is here for Mr. Scheiner. Sorry. Going once. Thanks. Okay.